1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JULIE ANNE McINTOSH,                    No. CIV S-05-1421-CMK

12              Plaintiff,

13        vs.                               <u>MEMORANDUM OPINION AND ORDER</u>

14   MICHAEL J. ASTRUE,[1]
     Commissioner of Social Security,

15
                Defendant.
16
     _____/
17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the consent of the parties, this case is before the undersigned for final decision on

21   plaintiff's motion for summary judgment (Docs. 18 & 19) and defendant's cross-motion for

22   summary judgment (Doc. 22).

23   / / /

24   _____

25        [1]    Pursuant to Federal Rule of Civil Procedure 25(d), Michael J. Astrue is
     substituted for his predecessor.  The Clerk of the Court is directed to update the docket to reflect
26   the above caption.

                                                1

# I. BACKGROUND

Plaintiff applied for supplemental security income benefits on October 17, 2002, based on disability.  In her application, plaintiff claims that her impairment began on January 1, 1996.  Plaintiff claims her disability consists of a combination of mental and physical impairments.  Specifically, in her brief, plaintiff asserts:

> The claimant suffers from severe mental disorders of a Bipolar Disorder, depression, and Post Traumatic Stress Disorder . . . .  As to physical impairments, Ms. McIntosh suffers from right hip osteoarthritis, right knee chondromalacia, lumbar piriformis muscoloskeletal strain, possible right hip degenerative joint disease, and possible lower spine degenerative joint disease.

Plaintiff is a United States citizen born August 5, 1967, with a tenth-grade education.

Plaintiff's claim was initially denied.  Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on November 11, 2003, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.  A decision denying benefits was issued on January 28, 2004, and plaintiff's appealed.  The Appeals Council granted the appeal and ordered a new hearing.  In it's April 19, 2004, order, the Appeals Council stated:

> The hearing decision . . . indicates that the claimant can do a narrow range of light work, but the finding is unclear and inconsistent with Finding #4 regarding sitting and postural restrictions.  The examiner at Exhibit 3F/4 imposed no sitting restrictions and suggested work capacity for a full range of sedentary work.  The decision found no significant mental limitations, rejecting the opinion of the author of Exhibit 11F, a purported mental health treating source, but the decision includes no discussion why treating source records from this source are not in the record.  There are no mental health treatment notes from Sacramento Health after October 2002 (Exhibits 9F and 1F).  The examining psychiatrist at Exhibit 10F noted good mental functioning based on sustained sobriety for 8 months, but he still suggested some moderate work restrictions (Exhibit 10F/7).  Treating source records are needed to corroborate the reported abstinence from crank and other drugs. If such significant treating source records are not available, the record must reflect that the ALJ fulfilled the requirements [of the regulations] to develop those records.  The evidence suggests some postural and mental work restrictions.  There is no vocational evidence in the record regarding the effect of the assessed work restrictions on the claimant's occupational base.

The Appeals Council directed the ALJ to do the following on remand:

1.    Obtain additional evidence concerning the claimant's drug addiction and affective disorders in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence.  The additional evidence should include treatment notes from Richard A. Malek, M.D.,. and Sacramento Mental Health, and may include, if warranted and available, a consultative mental status examination with psychological testing and medical source statements about what the claimant can still do despite the impairments;

2.    Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 C.F.R. 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. 416.920a(c);

3.    Clarify the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations.  In so doing, evaluate the treating and examining source opinions pursuant to the provisions of 20 C.F.R. 416.927 and Social Security Rulings 96-2p and 96-5p and nonexamining source opinion in accordance with the provisions of 20 C.F.R. 416.927(f) and Social Security Ruling 96-6p, and explain the weight given to such opinion evidence.  As appropriate, the Administrative Law Judge may request the treating and examining sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments.  The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources;

4.    Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy.  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve and conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publications, the Selected Characteristics of Occupations (Social Security Ruling 00-4p); and

5.    Conduct the further proceedings required to determine whether drug addiction is a contributing factor material to the finding of disability.

/ / /

/ / /

A second hearing was held before the same ALJ on October 5, 2004.  In his

January 25, 2005, decision, the ALJ made the following findings:

1.  The claimant has not engaged in substantial gainful activity since October 17, 2002;

2.  The medical evidence establishes that the claimant has severe right hip osteoarthritis, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4; the claimant does not have a severe mental impairment or impairments and her substance abuse is in remission;

3.  The claimant's testimony is not substantially credible for the reasons stated in the body of this decision;

4.  The claimant has the residual functional capacity to perform the physical exertion requirements of work except for standing or walking for more than 2 to 4 hours total, repetitively climbing, kneeling, crouching or crawling, occasionally lifting more than 20 pounds and frequently lifting more than 10 pounds; she can sit for 8 hours total;

5.  The claimant is unable to perform her past relevant work as a housekeeper and fast food cashier;

6.  The claimant's residual functional capacity for the full range of light work is reduced by standing, walking and postural restrictions;

7.  The claimant is a 37 year old, which is defined as younger age individual;

8.  The claimant possessed a limited 10th grade education;

9.  The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work;

10. If the claimant had the capacity to perform the full range of light work, section 416.969 of Regulation No. 16 and Rule 202.17, Table No. 2 of Appendix 2, Subpart P, Regulation No. 4, would direct a conclusion that the claimant is not disabled; if the claimant were limited to no more than the full range of sedentary work, Rule 202.18, Table No. 1, would direct a conclusion of not disabled;

11. The claimant's capacity for light work has not been substantially compromised by her exertional limitations; the vocational expert was asked whether an individual with these vocational factors and residual functional capacity is capable of performing any occupations existing in significant numbers; he responded that such an individual is fully capable of performing the following occupations: (1) Cashier – a light occupation (2,000 jobs in the state and 200,000 jobs in the nation); (2) Light Assembler (Electrical) – a light occupation (2,000 jobs in the state and 10,000 jobs in the nation); (3) Almond Factory Assembler – a sedentary

4

1    occupation (280 jobs in the state and 33,000 jobs in the nation); and

2    12.    The claimant has not been under a disability as defined in the Social
3           Security Act at any time through the date of this decision.

4    Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not

5    entitled to benefits.  After the Appeals Council declined review on May 20, 2005, this appeal

6    followed.

7

8                             **II.  STANDARD OF REVIEW**

9           The court reviews the Commissioner's final decision to determine whether it is:

10   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

11   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

12   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520,

13   521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

14   support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

15   including both the evidence that supports and detracts from the Commissioner's conclusion,

16   must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986);

17   Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the

18   Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See

19   Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

20   administrative findings, or if there is conflicting evidence supporting a particular finding, the

21   finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th

22   Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation,

23   one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas

24   v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

25   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338

26   (9th Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues that: (1) the ALJ failed to properly evaluate the medical opinions; (2) the ALJ failed to properly consider the hearing testimony offered by Ms. Phillips, a certified drug counselor; (3) the ALJ improperly rejected her testimony as not credible; (4) the ALJ erred in finding her mental impairments not severe; (5) the ALJ erred in finding that her functional capacity was not reduced by non-exertional limitations; (6) the ALJ erred by not propounding proper hypothetical questions to the vocational expert; and (7) the ALJ erred by failing to fully develop the record.[2]

#### A.    Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

---

[2]    Plaintiff's brief is not well organized and, in fact, is somewhat confusing.  In particular, the court notes that, at section II of her brief, plaintiff sets forth ten issues raised in this case.  The remainder of her brief, however, does not follow this organization.  Rather, the discussion section of her brief – section VI – raises eight arguments, some of which are restatements of prior arguments.  Moreover, she identifies the issues in section II as "IV". Whether the Commissioner erred as a matter of law in failing to properly evaluate the claimant's mother's lay testimony as to the condition of the claimant," "VII. Whether the Commissioner erred in exclusively relying on the Grids," and "VIII".  Whether the Commissioner erred as a matter of law in not obtaining testimony from a vocational expert" are not argued at all in the discussion section.  In fact, the record clearly demonstrates that the ALJ obtained vocational expert testimony.  For this same reason, it is clear that the ALJ did not rely on the Grids. Additionally, plaintiff's mother never testified or otherwise offered testimony.  While plaintiff's father submitted a statement as to plaintiff's daily activities, plaintiff does not discuss this evidence anywhere in her brief.  The court will focus herein only on those arguments as to which plaintiff offers an actual discussion.

1    In addition to considering its source, to evaluate whether the Commissioner

2    properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

3    in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

4    uncontradicted opinion of a treating or examining medical professional only for "clear and

5    convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

6    While a treating professional's opinion generally is accorded superior weight, if it is contradicted

7    by an examining professional's opinion which is supported by different independent clinical

8    findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

9    1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

10   rejected only for "specific and legitimate" reasons supported by substantial evidence.  See

11   Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough

12   summary of the facts and conflicting clinical evidence, states her interpretation of the evidence,

13   and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent

14   specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or

15   examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining

16   professional, without other evidence, is insufficient to reject the opinion of a treating or

17   examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to

18   any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d

19   1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported

20   opinion); see also Magallanes, 881 F.2d at 751.

21   Plaintiff argues that the ALJ erred in not according any weight to the opinions of

22   her treating psychiatrist, Dr. Malek, and agency examining psychiatrist, Dr. Canty, in

23   determining whether plaintiff had any mental limitations.[3]

24   / / /

25

26   [3]    Plaintiff does not appear to challenge the ALJ's findings with respect to her
complaints of osteoarthritis.

1.    <u>Dr. Malek</u>

As to Dr. Malek, the ALJ stated:

> The record . . . contains an undated impairment questionnaire from treating physician, Dr. Richard Malek, M.D., which diagnosed depression and a bipolar disorder with resulting poor memory, appetite disturbance, mood disturbance, recurrent panic attacks, social withdrawal, decreased energy, manic syndrome, obsession, anhedonia, and feelings of guilt/worthlessness.  However, the undersigned does not find this assessment to be credible because: (1) it is not attended with any objective clinical findings; (2) it is not corroborated by any medical treatment records; (3) it is against the great weight of the evidence of record; (4) it does not set forth any non-exertional mental impairment limitations whatsoever; (5) it appears to be based upon the claimant's self-serving subjective statements; (6) the fact that it is undated makes it difficult to determine whether this assessment is reflective of the claimant's current level of mental functioning; (7) its findings are at odds with the two other mental health functional assessments and the claimant's wide ranging activities of daily living.  As such, the undersigned cannot accord Dr. Malek's assessment any weight.

Plaintiff argues that the reasons stated by the ALJ for rejecting Dr. Malek's opinion are not supported by the record.

The court does not agree with plaintiff's contention.  Dr. Malek's assessment is, as the ALJ notes, not dated.  Therefore, the ALJ is correct that it is impossible to determine whether the assessment was current.  In addition, Dr. Malek's report does not relate any clinical findings to particular conclusions regarding plaintiff's ability to function in various areas.  Those sections of the evaluation form are left blank.  In this regard, plaintiff appears to argue that the ALJ failed to consider the clinical records from Placer County Systems of Care ("Placer County"), where Dr. Malek practiced.  This is not correct.  The Placer County records were before the ALJ as Exhibit 13F, which the ALJ discussed in detail in the hearing decision.  The ALJ gave the following summary, which plaintiff does not challenge:

> Since the date of the last decision, mental health treatment records, dated January 2003 to September 2004, have been submitted into evidence which fully establish that the claimant's condition has improved and she has continued to maintain her sobriety.  This is reflected in chart notes showing that suicidal and homicidal thoughts were denied, her appearance, speech and attitude were all good and her sobriety was still being maintained in February 2003; psychotic symptoms were absent,

insight and judgment were fair, and she was cooperative, oriented, and properly attired in April 2003; she was still clean and sober in April 2003; she was stable and less depressed in September 2003; she completed her treatment plan in February 2004; her appearance and attitude were good in March 2004; she had been clean and sober from the past 14 months as of March 2004; she was open about her feelings in June 2004; she was earning $75.00 each weekend as a child care provider in June 2004; she was sleeping and communicating well in July 2004; she was happy and free of illicit drugs and alcohol in July 2004; she was attending daily Rehab in August 2004; she was "doing so well" in her treatment program that she turned down an offer to move into assisted living in July 2004; she was working part time in day care in July 2004; and had just started a new job in August 2004; and she was stable on her medications in September 2004.  Although the claimant continued to experience periodic exacerbations of her depression throughout this period, these chart notes demonstrate that each episode was related to temporary life stressors . . .

As the ALJ observed, these clinical records are clearly inconsistent with Dr. Malek's opinion.

2.   Dr. Canty

As to Dr. Canty, the ALJ stated:

A further issue is whether the claimant's residual functional capacity has been compromised as a result of non-exertional limitations imposed by a mental impairment or impairments.  In this respect, the record shows that while the claimant has been diagnosed with polysubstance abuse with substance abuse induced anxiety and depression, her mental health condition has improved significantly as a result of her participating in a very structured alcohol and drug rehabilitative treatment program since on or about January 2003.  She has been characterized as a highly motivated individual in her efforts to remain clean and sober from the addiction of both alcohol and drugs, has participated in approximately 5 to 10 meetings per week during the past 12 months and has not experienced any relapses.  This is consistent with a consultative psychiatrist evaluation from Dr. Timothy Canty, M.D., dated September 11, 2003, which held that given the claimant's 8 months of remission from her polysubstance abuse disorder, she no longer has any evidence whatsoever of a psychiatric disorder and is fully capable of understanding, remembering and carrying out complex or detailed job instructions, making judgments in an occupational setting, socially interacting with the public, supervisors and co-workers, and reacting appropriately to work pressure, though adapting to changes in a work routine setting were determined to be moderately restricted.  The doctor further found that she has a GAF of 75, is presently functioning at a high level and would continue to function at such a level as long as she remains clean and sober.

The record further contains another consultative psychiatric assessment from Dr. Timothy Canty, M.D., dated July 16, 2004, which concluded that the claimant's adjustment disorder limited her to simple, routine tasks,

1    only having very limited contact with the public, co-workers and
     supervisors, and precluded her from handling overwhelming tasks.  The
2    undersigned, however, finds that this assessment is lacking in credibility
     as: (1) it is contrary to chart notes showing substantial improvement in the
3    claimant's mental health; (2) the doctor acknowledged that the claimant's
     substance abuse disorder is in remission; (3) it is at odds with the doctor's
4    substantially normal mental status examination findings; (4) it is
     inconsistent with the doctor's failure to diagnose depression and his GAF
5    finding of 60; (5) it is inconsistent with the doctor's [September 2003]
     psychiatric assessment wherein he opined that there was no evidence of a
6    psychiatric disorder that would prevent the claimant from working, that
     her GAF was 75 and that she could function if properly motivated; (6) the
7    doctor was not a treating mental health source; (7) it appears to have been
     based primarily upon the claimant's self-serving subjective statements.

8

9    Plaintiff argues that the ALJ erred in failing to give any weight to the July 16, 2004, evaluation.

10   Specifically, plaintiff asserts that Dr. Canty's 2004 assessment is consistent with other medical

11   evidence in the record.

12          Regardless of whether Dr. Canty's July 2004 evaluation is, as plaintiff contends,

13   consistent with other medical evidence, the court concludes that the ALJ nonetheless gave

14   sufficient reasons other than inconsistency for rejecting it.  For example, it is obvious that the

15   July 2004 assessment stands in stark contrast to Dr. Canty's September 2003 assessment, which

16   the ALJ accepted.  In addition, the ALJ stated that the July 16, 2004, assessment is inconsistent

17   with the objective findings and appears to be based primarily on plaintiff's subjective

18   complaints.  This finding is supported by the record.  Dr. Canty states in the July 16, 2004,

19   evaluation that he did not review any records.[4]  As to Dr. Canty's mental status examination, no

20   remarkable findings are noted.  While Dr. Canty described plaintiff's mood as slightly depressed,

21   he did not diagnose depression. The ALJ properly discounted the July 2004 evaluation because,

22   among other reasons, it was not supported by clinical findings and was based on subjective

23   complaints.  See Meanel, 172 F.3d at 1113; see also Magallanes, 881 F.2d at 751.

24   ///

25

26          [4]    Notably, Dr. Canty did not have access to the Placer County records which show
     improvement between 2003 and 2004.

10

**B.**    **Ms. Phillips' Testimony**

As to Ms. Phillips' testimony, the ALJ stated:

> Ms. Phillips previously testified that the claimant has been attending her
> drug and alcohol treatment meetings 3 to 4 times each week since January
> 2003.  She stated that the claimant has panic attacks, is oftentimes tearful,
> possessed comprehension problems, and cannot follow directions.  She
> further stated that the claimant's emotional problems have not improved
> with counseling.

There is no other discussion in the hearing decision concerning Ms. Phillips.  Plaintiff argues that the ALJ erred in not properly considering Ms. Phillips' hearing testimony regarding plaintiff's mental impairments.  Plaintiff states that Ms. Phillips' testimony constitutes "other source" medical evidence under 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1) and that the ALJ erred by not considering it as such.  Plaintiff also argues that, even if Ms. Phillips is only considered to be a lay witness, the ALJ still failed to adequately consider her testimony in the hearing decision.

1.    Lay Witness Testimony

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.

The ALJ, however, need not discuss all evidence presented.  See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain why "significant probative evidence has been rejected."  Id. (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981).  Applying this standard, the court held that the ALJ properly ignored

1    evidence which was neither significant nor probative.  See id. at 1395.  As to a letter from a

2    treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected

3    uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was

4    controverted by other medical evidence considered in the decision.  See id.  As to lay witness

5    testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court

6    concluded that the evidence was properly ignored because it "conflicted with the available

7    medical evidence" assessing the plaintiff's mental capacity.  Id.

8              In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent

9    disregard of lay witness testimony.  See 454 F.3d 1050, 1053-54 (9th Cir. 2006).  The lay

10   witness had testified about the plaintiff's "inability to deal with the demands of work" due to

11   alleged back pain and mental impairments.  Id.   The witnesses, who were former co-workers

12   testified about the plaintiff's frustration with simple tasks and uncommon need for supervision.

13   See id.   Noting that the lay witness testimony in question was "consistent with medical

14   evidence," the court in Stout concluded that the "ALJ was required to consider and comment

15   upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact his

16   ability to work."  Id. at 1053.   The Commissioner conceded that the ALJ's silent disregard of the

17   lay testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth

18   Circuit rejected the Commissioner's request that the error be disregarded as harmless.  See id. at

19   1054-55.  The court concluded:

20              Because the ALJ failed to provide any reasons for rejecting competent lay
             testimony, and because we conclude that error was not harmless,
21              substantial evidence does not support the Commissioner's decision . . .

22   Id. at 1056-67.

23              From this case law, the court concludes that the rule for lay witness testimony

24   depends on whether the testimony in question is controverted or consistent with the medical

25   evidence.  If it is controverted, then the ALJ does not err by ignoring it.  See Vincent, 739 F.2d

26   at 1395.  If, however, lay witness testimony is consistent with the medical evidence, then the

1   ALJ must consider and comment upon it.  See Stout, 454 F.3d at 1053.

2              In this case, the ALJ's discussion of Ms. Phillips is limited to a summary of her

3   testimony.  Because the ALJ did not analyze her testimony in the context of determining

4   disability, he essentially disregarded Ms. Phillips' testimony.  Therefore, the question is whether

5   her testimony is consistent with the medical evidence.  In light of the Placer County records

6   covering the time period Ms. Phillips worked with plaintiff, as well as Dr. Canty's September

7   2003 evaluation, the court concludes that Ms. Phillips testimony is not consistent with the

8   medical evidence.  Specifically, while Ms. Phillips testified that plaintiff has not improved, this

9   is not borne out by the Placer County records.  In addition, Ms. Phillips' assessment of plaintiff's

10  ability to perform work is at odds with Dr. Canty's September 2003 evaluation, in which he

11  opined that she was functioning at a high level and would continue to do so as long as she

12  remained clean and sober, which the Placer County records show she did.

13              2.    "Other Source" Testimony

14             Even if Ms. Phillips' testimony is considered "other source" medical evidence,

15  the rule derived from Vincent and Stout applies in this context as well.  In Vincent, the Ninth

16  Circuit considered the ALJ's silent disregard of a letter from a treating psychiatrist and

17  concluded that, because it was controverted by other medical evidence, the ALJ did not err in

18  disregarding it completely.  See Vincent, 739 F.2d at 1395.  Similarly, to the extent Ms. Phillips'

19  testimony constitutes "other source" medical evidence, it was properly disregarded because it is

20  controverted by other medical evidence in the record.

21          C.   **Plaintiff's Credibility**

22             The Commissioner determines whether a disability applicant is credible, and the

23  court defers to the Commissioner's discretion if the Commissioner used the proper process and

24  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  An explicit

25  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

26  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See id. at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

As to plaintiff's credibility, the ALJ first summarized her hearing testimony and then stated:

> The undersigned has carefully considered the claimant's symptoms of right hip osteoarthritis in terms of the Social Security Ruling 96-7p and has concluded that her complaints are out of proportion to the overall weight of the objective medical evidence of record and other factors of a non-medical nature and therefore, renders her testimony not substantially credible.  In this regard, the record shows that notwithstanding the claimant's complaints of post-traumatic right hip osteoarthritis following an old motorcycle accident, this condition has not required surgery, has not been corroborated by radiological imaging studies or laboratory testing, had not been attended with significant objective clinical findings, has required only minimal medical care, has not precipitated the use of assistive devices for ambulation, and has not resulted in undue limitations in her ability to live a fully independent lifestyle.

The ALJ then noted the consistency with Dr. McIntire's conclusion that plaintiff ". . .is fully capable of performing unlimited sitting, standing or walking for not more than 3 to 4 hours total,

occasionally climbing or squatting, and lifting not more than 20 pounds." The ALJ then added:

> . . . Similarly, a non-examining state agency physician opined in December 2002 that the claimant is fully capable of performing prolonged sitting, standing or walking for not more than four hours, frequently lifting not more than 10 pounds, and occasionally climbing, kneeling, crouching, crawling and lifting not more than 20 pounds. More recently, another nonexamining state agency physician noted in July 2004 that the claimant's right hip pain would not interfere with her ability to frequently sit and lift not more than 25 pounds and occasionally stand, walk, climb, stoop, kneel, crouch, crawl and lift not more than 50 pounds.

The ALJ also discussed evidence concerning plaintiff's daily activities:

> . . . Other evidence which is probative on the issue of credibility consists of the claimant's wide ranging activities of daily living which include regularly attending drug treatment group meetings during the week, managing her own money, socializing with others, cooking, vacuuming, washing dishes, doing light housework, shopping, doing part time work, attending church, caring for her parents, and walking her dogs.

Plaintiff argues that the ALJ erred in finding her testimony not credible. The court cannot agree. First, it is clear that the ALJ identified the non-credible testimony (her subjective complaints of pain and mental limitations) and then gave reasons for rejecting it. Thus, the ALJ used the proper process to assess credibility. Second, the ALJ's analysis is supported by the record. Plaintiff's complaints concerning osteoarthritis are not corroborated by the medical opinions which state that plaintiff is not limited by osteoarthritis. Additionally, plaintiff's complaints concerning her mental limitations are inconsistent with the objective clinical evidence, in particular the records from Placer County which show improvement. Finally, plaintiff's daily activities belie the severity of impairments suggested by plaintiff's testimony. Notably, plaintiff walks her dogs, socializes well with others, and cares for her parents.

### D.   Plaintiff's Mental Impairments

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). In determining whether a claimant's alleged impairment is

1  sufficiently severe to limit the ability to work, the Commissioner must consider the combined

2  effect of all impairments on the ability to function, without regard to whether each impairment

3  alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir.

4  1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment,

5  or combination of impairments, can only be found to be non-severe if the evidence establishes a

6  slight abnormality that has no more than a minimal effect on an individual's ability to work.  See

7  Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.

8  1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the

9  impairment by providing medical evidence consisting of signs, symptoms, and laboratory

10  findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone

11  is insufficient.  See id.

12          Plaintiff argues that the ALJ erred in finding her mental impairments were not

13  severe.  Specifically, plaintiff asserts that substantial evidence does not support the ALJ's

14  finding at step two of the sequential analysis that plaintiff does not have severe mental

15  impairments.  In support of this position, plaintiff argues that: (1) the ALJ did not accord the

16  appropriate weight to the opinions of Drs. Malek and Canty; (2) the ALJ did not properly

17  consider hearing testimony from Ms. Phillips; (3) the ALJ did not accord her testimony

18  regarding her subjective complaints sufficient weight because he erred in finding her testimony

19  not credible; and (4) the ALJ failed to accord sufficient weight to medical records from Placer

20  County.

21          Each of these arguments is merely a restatement of earlier arguments.  As

22  discussed above, the ALJ properly considered the opinions of Drs. Malek and Canty.  In fact,

23  while the ALJ rejected the July 2004 evaluation, he accepted Dr. Canty's September 2003

24  assessment, which revealed that plaintiff did not have significant mental impairments.  In

25  addition, the ALJ properly omitted a discussion of Ms. Phillips' testimony because it was not

26  consistent with the rest of the record as a whole.  The ALJ also properly discounted plaintiff's

1  testimony as not credible, because, among other reasons, it was inconsistent with plaintiff's

2  statements as to her daily activities.  Finally, contrary to plaintiff's contention, the ALJ gave a

3  detailed treatment of the Placer County records, which show improvement with complete

4  sobriety from 2003 through 2004.

5       **E.      Plaintiff's Non-Exertional Limitations**

6             Plaintiff argues that the ALJ erred in finding that her residual functional capacity

7  is not compromised by non-exertional impairments.  Specifically, plaintiff asserts that the ALJ

8  did not accord appropriate weight to Dr. Malek's opinion that plaintiff is limited with respect to

9  "overwhelming tasks," and Dr. Canty's opinion that plaintiff can only work in a quiet and

10 supportive environment with a small number of co-workers and supervisors and limited public

11 contact.  Plaintiff also argues that the ALJ failed to properly consider Ms. Phillips' testimony.

12            Again, as with plaintiff's arguments concerning her mental impairments,

13 discussed above, plaintiff restates her earlier arguments concerning the ALJ's evaluation of the

14 medical opinions and her credibility.  These arguments have ben rejected.

15       **F.      Hypothetical Questions**

16            Hypothetical questions posed to a vocational expert must set out all the

17 substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.

18 Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

19 limitations, the expert's testimony as to jobs in the national economy the claimant can perform

20 has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While

21 the ALJ may pose to the expert a range of hypothetical questions, based on alternate

22 interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

23 determination must be supported by substantial evidence in the record as a whole.  See Embrey

24 v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

25            Plaintiff argues that the ALJ erred by not propounding to the vocational expert

26 hypothetical questions which fully described her limitations.  Specifically, plaintiff asserts that

the hypothetical questions posed by the ALJ: (1) did not account for Ms. Phillips' hearing testimony; and (2) failed to reflect a proper analysis of the opinions of Drs. Malek, Canty, McIntire, and Borges.

As to the ALJ"s credibility finding, that has been discussed earlier, the court has concluded that the ALJ did not err in determining that plaintiff's testimony was not consistent with her daily activities.  As to the ALJ's analysis of the medical opinions, Drs. Malek and Canty have also been discussed above and the court has concluded that the ALJ properly credited these opinions.  As to Dr. McIntire, the ALJ first outlined his finding that plaintiff's complaints of right hip pain are out of proportion to the objective evidence and stated:

> . . . This is consistent with a consultative orthopedic evaluation from Dr. Steve McIntire, M.D., dated December 8, 2002, which held that while the claimant does have right hip range of motion restrictions, given the lack of any significant gait abnormality or leg length discrepancy, negative neurological testing, and absences of deformities, she is fully capable of performing unlimited sitting, standing or walking for not more than 3 to 4 hours total, occasionally climbing or squatting, and lifting not more than 20 pounds.

As to Dr. Borges, the ALJ stated:

> The record has been updated by a consultative orthopedic examination from Dr. Gabriel Borges, D.O., dated June 24, 2004, which concluded that even though the claimant's right knee injury and lumbar strain would not prevent her from sitting for 6 to 8 hours total and frequently lifting up to 25 pounds, her ability to walk or stand was limited to 2 hours total.  The undersigned finds that while this assessment is generally credited, that portion pertaining to walking and standing limitations is disregarded because: (1) the doctor did not have any radiological imaging studies to corroborate his diagnosis of probable right hip degenerative joint disease; (2) the doctor's examination findings of a mild limp, ability to walk without assistive devices, normal sensory, reflex, muscle strength and motor testing, absence of deformities, normal leg lengths, and negative straight leg raising is at odds with his functional assessment; (3) the doctor was only a one time examiner who appeared to have based his functional assessment upon the claimant's self-serving subjective assessment; (4) it is refuted by Dr. McIntire's assessment that the claimant can stand or walk for up to 4 hours; (5) it is at odds with the claimant's recent part-time child care work and extensive daily living activities.  Hence, the undersigned does not credit the doctor's standing and walking limitations.

18

1        Assuming, as plaintiff argues, that Dr. McIntire's December 2002 assessment is

2   too old to be relevant, the court finds that the evidence in the record as a whole nonetheless

3   supports the hypothetical asked by the ALJ.  As outlined in the hearing decision:

4              The vocational expert was asked . . . to assume a claimant 37 years of age,
               10th grade education, with the capacity to sit unlimited, walk or stand up
5              to 4 hours total, perform occasional postural activities, lift 20 pounds
               occasionally and 10 pounds frequently, with no manipulative limitations.
6

7   Plaintiff argues that the ALJ erred in rejecting Dr. Borges' limitation of walking or standing for

8   up to 2 hours.  The court disagrees.  The 2-hour limitation was properly discredited for the

9   reasons given by the ALJ – there was no radiological imaging; the examination findings were

10  inconsistent with a 2-hour limitation; and the limitation is inconsistent with plaintiff's daily

11  activities.

12        **G.**      **Development of the Record**

13        Plaintiff argues that the ALJ erred by not fully developing the record.    The court

14  rejects this argument.  The record clearly shows that additional evidence was received after the

15  first hearing and that such evidence was considered by the ALJ.  In particular, the ALJ

16  considered the July 2004 report from Dr. Canty as well as the extensive treatment records from

17  Placer County.

18        Plaintiff contends that the ALJ failed to adequately develop the record because he

19  did not ascertain the date of Dr. Malek's source statement.  Even if true, however, the court has

20  concluded that other reasons justified rejecting Dr. Malek's opinion.  Therefore, the fact that the

21  report was not dated or that the ALJ did not ascertain the date, is irrelevant.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment is denied;

2.      Defendant's cross-motion for summary judgment is granted; and

3.      The Clerk of the Court is directed to enter judgment and close this file.

DATED:   February 15, 2007.

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE